<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| RASOOL MCCRIMMON, | : | |
| | : | Case No. 18-16281 (BRM) (AME) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| STEVEN JOHNSON, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion for Summary Judgment filed by Defendants Steven Johnson, Amy Emrich, and Sean Patterson (collectively, "Defendants"), seeking judgment in their favor of Plaintiff Rasool McCrimmon's ("Plaintiff") § 1983 claims against them. (ECF No. 50.) Plaintiff filed an opposition (ECF No. 51), Defendants filed a reply (ECF No. 52), and Plaintiff filed a surreply (ECF No. 53). Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, Defendants' Motion is **GRANTED**.

**I.  BACKGROUND**

Plaintiff, a prisoner currently confined at New Jersey State Prison ("NJSP"), is proceeding with this civil rights matter seeking relief pursuant to 42 U.S.C. § 1983. On November 19, 2018, Plaintiff filed his initial civil rights complaint seeking relief pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff subsequently filed an amended complaint. (ECF No. 8.) On May 14, 2019, upon screening the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court issued an

Opinion and Order dismissing several defendants for lack of allegations of personal involvement and proceeding the remainder of the amended complaint. (ECF No. 9.)

On September 12, 2019, Plaintiff filed a motion to amend with the now-operative amended complaint ("Amended Complaint"). (ECF Nos. 24 and 24-3.) On October 9, 2019, the Court granted Plaintiff's motion to amend and accepted Plaintiff's Amended Complaint for filing. (ECF No. 29.) The Amended Complaint raises one claim under 42 U.S.C. § 1983 for violation of Plaintiff's rights under the First Amendment, based on allegations his legal mail was opened outside of his presence and without his knowledge or consent on four occasions between November 2016 and August 2018. (*See* ECF No. 24-3.)

Defendants Johnson, Emrich, and Patterson filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 30.) On July 8, 2022, the Court granted in part and denied in part the motion. (ECF No. 32.) The Court denied Defendants' argument that they lacked personal involvement and found "the allegations allege with enough facial plausibility to show a pattern, practice or custom of opening legal mail" and state a claim against Defendants based on a supervisory liability theory. (*Id.* at 7.)

Defendants filed this Motion for Summary on July 8, 2022. (ECF No. 50.) The only remaining claims in the Amended Complaint are Plaintiff's assertions that the mailroom defendants opened his legal mail outside of his presence and that Defendants Johnson, Emrich, and Patterson failed to remedy the constitutional violation.

As required by Local Civil Rule 56.1, Defendants submitted their Statement of Material Facts Not in Dispute. Plaintiff did not file a responsive statement. Therefore, the Court will gather the relevant facts from the Amended Complaint, Plaintiff's deposition testimony and Defendant's Local Civil Rule 56.1 statement of undisputed material facts and supporting exhibits. *See Athill v.*

*Speziale*, 2009 WL 1874194, at *2 (D.N.J. June 30, 2009) (citing *Jordan v. Allgroup Wheaton*, 218 F.Supp.2d 643, 646 n.2 (D.N.J.2002)) ("Where a nonmoving *pro se* litigant fails to file a responsive Local Civil Rule 56.1 statement of undisputed material facts, a court may draw the relevant facts underlying the claims from available sources such as the complaint, deposition testimony, the moving litigant's Local Civil Rule 56.1 statement of undisputed material facts and supporting exhibits."). As the Motion for Summary Judgment involves only the three supervisor Defendants, the Court only addresses the allegations from the Amended Complaint that are relevant to Plaintiff's First Amendment claim against Defendants Johnson, Emrich, and Patterson.

The Amended Complaint alleges that Plaintiff's legal mail was opened outside of his presence and without his permission on four separate occasions throughout 2016 and 2017. (*See* ECF No. 24-3 at 5-13.)

In the first instance alleged, Plaintiff submits that on November 17, 2016, he placed two different manila envelopes in the prison mail, both of which contained copies of Plaintiff's Post Conviction Relief petition and contained "postage remit[s] marked legal mail." (ECF No. 24-3 ¶ 11.) Plaintiff testified at his deposition that the day after he gave the envelopes to prison mail officials for mailing, the items were returned to him and "[b]oth of them [were] open. One of them was actually outside of the envelope." (*See* ECF No. 50-6, Plaintiff's Deposition ("Pl. Dep.") 16:2-7, 18:22 to 19:5.)

On November 18, 2016, Plaintiff filed a grievance regarding the incident, stating "yesterday I sent out 2 manilla folders with legal mail via postage remit checked off legal mail. Today both envelopes [were] sen[t] back stapled together and one of them was opened with my legal motion outside of the envelope. In the enveloped was a paper saying it was 'not approved' . . . since when do I need approv[]al to send out legal mail and why was it opened and my

3

paperwork out?" (ECF No. 50-8 at 2.) A response of "your position is noted" was given by Gerard Doran. (*Id.*) On December 12, 2016, Plaintiff filed another grievance concerning the November 17, 2016 incident, stating that his First Amendment rights to private legal mail had been violated. (*Id.* at 3.) On December 14, 2016, Defendant Johnson responded "you have received an appropriate response. Mailroom staff will be reminded to look closely for legal mail." (*Id.*)

The second instance alleged occurred on August 15, 2017. (ECF No. 24-3 at 7.) Plaintiff testified that on August 15, 2017, he received correspondence from the Court concerning an ongoing legal matter and prison staff opened the envelope out of the presence of Plaintiff and distributed it to Plaintiff with his regular mail. (Pl. Depo., 27:12-24.)

On August 16, 2017, Plaintiff filed an inquiry stating "I got some legal mail that[] was already opened and stapled back as if it was regular mail. . . . Just a few months ago I had to write you about legal mail I sen[t] out that was clearly marked legal mail . . . I need this violation of my rights to stop . . . Why are you [] opening my legal mail . . . This seems to be a continuing thing." (ECF No. 50-8 at 4.) Defendant Patterson responded, "all legal mail is processed in accordance with 10A, verify it was legal mail in reference to 10A." (*Id.*) The following day, Plaintiff filed another inquiry, explaining his housing officer could verify it was legal mail and had it had been logged in the "book." (*Id.* at 5.) Defendant Patterson responded "noted." (*Id.*) On August 22, 2017, Plaintiff filed a third inquiry regarding the incident and Defendant Patterson responded indicating "mailroom was updated on the procedure for handling legal mail." (*Id.* at 6.)

On August 27, 2017, Plaintiff filed a grievance regarding the August 15, 2017, opening of his legal mail. (*Id.* at 7.) In October 2017, Defendant Patterson responded, "mailroom staff were reminded of the procedure to handle legal mail." (*Id.*) Plaintiff's appealed alleging his

4

"constitutional rights [were] being violated without any hesitation [and] [it] is beyond any mistakes this is deliberate." (*Id.*) On October 16, 2017, Defendant Johnson responded as follows:

> Please provide the dates that the legal mail was received outside the proper channels so we can look at and re-train the officers that would have processed the mail. We have been training officers to identify legal mail before it is being place in the machine. If in the future this happens again, please submit a grievance immediately so the situation can be addressed immediately.

(*Id.*) Defendant Emrich closed the appeal. (*Id.*)

The third alleged incident took place in September 2017. (ECF No. 24-3 at 10.) Plaintiff again received legal mail that had been opened outside of his presence. (*Id.*, *see* Pl. Dep. 36:23 to 37:25.) On September 19, 2017, Plaintiff filed an inquiry stating:

> Today is Tuesday September 19, 2017, I was given some more legal mail which was opened . . . it was given to me along wit[h] regular mail and I did not have to sign for it by SCOR M. Elhady . . . I asked him to put this in the book for me as well[,] so this should also be noted in the log book . . . this opening of my legal mail is a continuous process [you all] keep on opening my legal mail in violation of my rights.

(ECF No. 50-8 at 8.) Defendant Patterson responded that "mailroom was advised to use more caution when processing mail." (*Id.*) On October 1, 2017, Plaintiff filed a grievance regarding the incident and Defendant Patterson responded again that "mailroom staff were reminded of the procedure to handle legal mail." (*Id.* at 9.) Plaintiff appealed, and Defendant Johnson responded, "I want you to file a grievance the day it occurs if it happens again. We will investigate immediately. We are training and re-emphasizing the legal mail process and importance on a daily basis." (*Id.*)

The fourth and final incident alleged took place on August 14, 2018. (ECF No. 24-3 at 11-12.) Plaintiff alleges he returned to his cell and "some legal mail which had already been opened

5

outside of [his] presence was sitting in [his] cell." (*Id.* at 11.) The following day Plaintiff filed an inquiry stating the following:

> [Y]esterday 8/14/18 came from my program and some legal mail was placed in my cell addressed to me and opened already outside of my presence . . . I told COR J. Egoavil about this and asked could he document in the logbook. I gave him the envelope and he acknowledged distributing the mail to me but Sgt. Mendoza told him not to put it in the log book . . . I explained to the officer that I needed it to be logged to show proof that i[t] actually happened[.] [H]e said that Sgt. Mendoza told him to tell me the matter was over and to lock in my cell. I complied . . . but my legal mail is continuously being opened outside of my presence in violation of my constitutional [rights] . . . legal mail should not be opened and distributed with regular mail[.] [T]his is a continuous pattern that happened to be at least 4 times in the past 2 years.

(ECF No. 50-8 at 10.) Defendant Patterson responded that "staff have been advised to use extra caution when processing mail." (*Id.*) On September 1, 2018, Plaintiff filed a grievance regarding this incident. (*Id.* at 11.) Defendant Patterson responded that "mailroom staff do not intentionally open legal mail, they have been advised to use extra caution when processing mail to prevent any mistakes from occurring in the future." (*Id.*) Plaintiff appealed, and Defendant Emrich responded that the "mailroom has provided an adequate response to your inquiry." (*Id.*)

During the relevant time period, Defendants worked in supervisory positions at NJSP. (DSOMF ¶ 5.) Defendant Johnson was the Administrator of NJSP and Defendant Emrich was an administrator at NJSP. (*Id.* ¶ 6.) At the times relevant here, Defendant Patterson was the mailroom sergeant at NJSP. (*Id.* ¶ 7.)

On July 8, 2022, Defendants filed their Motion for Summary Judgment arguing that (1) Defendants are entitled to qualified immunity; (2) Plaintiff cannot establish Defendants possessed sufficient knowledge of or acquiesced to an unlawful pattern or practice; and (3) Plaintiff's claim

for punitive damages should be dismissed because Defendants did not exhibit reckless or callous conduct. (ECF No. 50-1.)

## II. LEGAL STANDARD

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The mere existence of an alleged disputed fact is not enough. Rather, the opposing party must prove that there is a genuine issue of a material fact. *Id.* An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *Id.*

On a summary judgment motion, the moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. To meet its burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Therefore, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light

7

most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

### III. DECISION

Here, Plaintiff's First Amendment claim arises out of the alleged opening of his legal mail out of his presence without his permission. Specifically, Plaintiff alleges his legal mail was opened out of his presence four times over a twenty-one-month period. Defendants contend they are entitled to qualified immunity because settled law does not clearly establish that four instances of the opening of legal mail over a twenty-one-month period amounts to a pattern or practice of opening Plaintiff's legal mail outside of his presence in violation of the First Amendment.

New Jersey Administrative Code Title 10A, Chapter 18 (Mail, Visits and Telephone), Subchapter 3 (Legal Correspondence) governs the processing of legal mail at New Jersey State Prison. (ECF No. 50-2, Defendants' Statement of Material Facts ("DSOMF") ¶ 9, citing N.J.A.C. 10A:18-3.1 to -3.13.) The New Jersey Administrative Code provides that "[i]ncoming legal correspondence shall be opened and inspected only in the presence of the inmate to whom it is addressed," and that "[i]ncoming legal correspondence shall not be read or copied." (*Id.* ¶ 10, quoting N.J.A.C. 10A:18-3.4(b).) The Administrative Code does not provide for opening or inspection of legal mail outside of the relevant inmate's presence. (*Id.* ¶ 11.)

A plaintiff may state a First Amendment claim against a defendant who read his legal materials if he alleges that there was a pattern or practice of opening and reading his legal materials outside of his presence. *See Schreane v. Holt*, 482 F. App'x 684, 676-77 (3d Cir. 2012) ("Prisoners may establish a violation of the First Amendment without establishing actual injury where there is a pattern and practice of opening properly marked incoming legal mail outside the prisoner's presence.") (citing *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006)).

8

Plaintiff's claims against moving Defendants are based on their positions as administrators and as a mailroom sergeant. A § 1983 plaintiff cannot rely solely on a *respondeat superior* theory to establish liability. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) ("Section 1983 liability cannot be found solely on the basis of respondeat superior."). Instead, a plaintiff must allege that a supervisor had a personal involvement in the alleged wrongs. *See Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted). "To establish knowledge and acquiescence of a subordinate's misconduct, a plaintiff must allege the defendant's (1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior." *Broadwater v. Fow*, 945 F. Supp. 2d 574, 588 (M.D. Pa. 2013) (citing *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000)).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There is a two-step inquiry into whether qualified immunity applies: (1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), abrogated in part by *Pearson v. Callahan*, 555 U.S. 223 (2009). The court may grant qualified immunity on either of the two prongs. *See, e.g., Pearson*, 555 U.S. at 243-245 (evaluating only *Saucier*'s second prong and holding that law enforcement officers were entitled to qualified immunity because the unlawfulness of their conduct was not clearly established).

Defendants argue in their Motion for Summary Judgment that there is no precedent that clearly establishes that four instances of prison staff opening Plaintiff's legal mail over a twenty-one-month time period amounts to an unlawful pattern or practice. As such, the Court will start by addressing the second prong of *Saucier*.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Kane v. Barger*, 902 F.3d 185, 194 (3d Cir. 2018) (citations omitted). To determine if the "right at issue" was "clearly established" at the time of the alleged misconduct, the right at issue must be defined "at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). However, "it need not be the case that the exact conduct has previously been held unlawful so long as the contours of the right are sufficiently clear." *Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

If the scope of a particular constitutional right is "highly fact-specific," it can be reasonable for government officials to err in believing that their conduct comports with the law. *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 859 (3d Cir. 2012). Officials "should not be stripped of qualified immunity simply because this belief turned out to be mistaken." *Id.*

Here, Defendants argue that they are entitled to qualified immunity because it is not clearly established that four sporadic occasions from November 2016 to August 2018 of the opening of Plaintiff's legal mail outside of his presence amounts to an unlawful pattern or practice. Defendants argue that although Plaintiff asserts four instances of legal mail interference, the evidence of record shows each supervisor Defendant were aware of only two or three of the instances. Defendants rely on Plaintiff's inquiry and grievance forms and submit that Defendant Johnson responded to Plaintiff's inquiries and grievances related to the November 2016, August 2017, and September

2017 instances only. (ECF No. 50-1, at 14-15 (citing DSOMF ¶¶ 16, 25, 29).) Defendants submit Defendant Patterson responded to Plaintiff's inquiries and grievances related to the August 2017, September 2017, and August 2018 instances. (*Id.* (citing DSOMF ¶¶ 23, 27-28, 33).) Finally, Defendants submit Defendant Emrich is only listed as having responded to Plaintiff's inquires and grievances regarding the August 2017 and August 2018 instances. (*Id.* (citing DSOMF ¶¶ 25, 34).)

Courts within the Third Circuit and other Circuits have declined to set a specific number of instances of interference with legal mail that would be presumed to be a pattern and practice that rises to the level of a constitutional violation, and therefore, decisions vary in the number of instances that constitute a violation. *See, e.g., Taylor v. Oney*, 196 F. App'x 126 (3d Cir. 2006) (not precedential) (holding that complaint stated a potential First Amendment claim where plaintiff alleged legal mail was opened outside of his presence on eight occasions over a four year period); *see also Rogers v. McKishen*, No. 13-3771, 2018 WL 3201784, at *7 (D.N.J. June 29, 2018) (noting five instances of opening of legal mail may be enough to establish a pattern or practices); *see Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) ("Two or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim.").

However, several courts have also found that mere isolated incidents of opening legal mail outside of an inmate's presence, without evidence of an improper motive, is insufficient to establish a First Amendment violation. *See, e.g., Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation."); *Hale v. Pa Dept. of Corr.*, No. 07-0345, 2010 WL 3791833, at *3 (M.D. Pa. Sept. 16, 2010) ("[O]pening [court mail] outside [prisoner's] presence on two occasions . . . does not demonstrate a pattern or practice of improper handling of his legal mail sufficient to find

a First Amendment violation . . . . Isolated incidents of opening legal mail outside of an inmate's presence, without any evidence of improper motive, is nothing more than an assertion of negligence, and is insufficient to establish a constitutional violation."); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (finding two instances of mail interference did not give rise to a claim); *Cancel v. Goord*, No. 00-2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001) (dismissing claim where only two incidents of tampering alleged and no other indications of a continuing practice); *Beese v. Liebe*, 51 F. App'x 979, 981 (7th Cir. 2002) (dismissing First Amendment claim based on allegations that four pieces of legal mail had been opened outside of inmate's presence, since the inmate presented no evidence that his legal mail had been intentionally opened, and where the inmate-plaintiff merely speculated that the prison official intended to do so); *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997) (finding that isolated and inadvertent mishandling of legal mail not actionable); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (same); *Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) (stating that "a few isolated instances of plaintiff's mail being opened out of his presence" that were "either accidental or the result of unauthorized subordinate conduct . . . were not of constitutional magnitude") .

      Here, the evidence of record supports that each moving Defendant was aware of less than four occasions of interference with Plaintiff's legal mail. The instances took place over nearly a two-year time period. There have been no facts submitted to show whether these instances were done intentionally or inadvertently, or if the mail opening was done by one individual or different individuals.

      Based on the above, there is no clear precedent regarding how many instances of interference with legal mail constitutes a custom or practice that would amount to a First Amendment violation. Plaintiff does not cite, nor has the Court found, a published decision from

12

the Supreme Court or the Third Circuit Court of Appeals holding that two, three, or even four instances of interference with legal mail over a nearly two-year period shows a custom or practice that violates the First Amendment. As such, is it not so clearly established that a reasonable person would have known that these sporadic instances showed a custom or policy that was violating Plaintiff's First Amendment rights. Defendants are entitled to qualified immunity and their Motion for Summary Judgment is granted.[1]

### IV. CONCLUSION

For the reasons expressed above, Defendants' Motion for Summary Judgment is **GRANTED**. (ECF No. 50.) Accordingly, Plaintiff's Amended Complaint is dismissed against Defendants Johnson, Patterson, and Emrich. An appropriate order follows.

Dated: November 30, 2022

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

---

[1] Because the Court has found moving Defendants are entitled to qualified immunity, it is unnecessary to address Defendants' remaining arguments.

13